UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| EDWARD WALLNER, ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CIVIL ACTION NO. |
| VS. ) | |
| ) | 3:09-CV-0587-G |
| JERRY FARISH, ET AL., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are the motions of the defendants Michael Ziegler ("Ziegler") and Jerry Farish ("Farish") (collectively, the "movants") for a new trial, or in the alternative, to amend the judgment issued by this court on June 30, 2010 (docket entries 105, 106). For the reasons set forth below, the motions are denied.

I. BACKGROUND

This case was tried by a jury, which found by a preponderance of the evidence that the plaintiffs, Edward Wallner ("Wallner") and Edward Wallner Roth IRA ("Wallner IRA") (collectively, the "plaintiffs"), proved their common-law fraud,

statutory fraud, and civil conspiracy claims, and awarded the plaintiffs $1.5 million in compensatory damages and $150,000 in exemplary damages.[1]

The following facts were raised before the jury: on May 1, 2007, the defendant TDHB, Inc. ("TDHB") executed a promissory note (the "note") in favor of Wallner for $1 million, with the principal balance due on February 1, 2008. In November 2007, Ziegler and Farish approached Wallner to solicit his investment in a real estate development project that TDHB was proposing to begin in Waxahachie, Texas (the "development project").

Triad Investment Group, Inc. ("Triad") was formed on December 6, 2007. Around the same time, Ziegler represented to Wallner that (a) the property for the development was to be owned by Triad; and (b) the reference to "rollover" in the prospectus connoted that in lieu of repaying the note TDHB would transfer $1 million in cash to Triad.

On January 7, 2008, Wallner IRA made a capital contribution to Triad in the amount of $350,000 and received 461,934 shares of Triad's common stock. Wallner also received 1,518,066 shares of Triad's common stock after he agreed to make a $150,000 cash investment and "rollover" the note's $1 million principal. Ziegler used the plaintiffs' $500,000 capital investment in Triad to purchase the property in

---

[1] After the plaintiffs rested their case in chief, counsel for Ziegler stipulated to liability, as a matter of law, on the plaintiffs' claim for breach of the shareholders' agreement.

Waxahachie, Texas, but he titled the property to the defendant 777 Development Group LLC ("777"), a wholly-owned TDHB subsidiary. Wallner was led to believe that Triad would own the Waxahachie property, and that Triad had $1 million in cash on its books.

The parties later executed a shareholders' agreement for Triad ("shareholders agreement"), which contained a "put option" that obligated Farish, Ziegler, and Ziegler's wife to repurchase the Triad stock from the plaintiffs for $2,090,895 (the "option price") if requested at any time between June 30 and December 31, 2009 (the "option period"). On June 30, 2009, the plaintiffs exercised the put option, but the defendants did not perform.

## II. ANALYSIS

### A. The Legal Standard

After the jury returned its verdict and the court entered judgment, Ziegler and Farish moved for a new trial or in the alternative an amended judgment. *See*, *e.g.*, Michael Ziegler's Motion for New Trial, and Alternatively Motion to Amend Judgment ("Ziegler Motion") at 1.

Motions for a new trial or to alter or amend the judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence. *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (citations omitted). Such motions may not be used to relitigate issues that were resolved to the

movants' dissatisfaction, *Salinas v. Wal-Mart Stores Texas, LLC*, No. 3:10-CV-1691-L, 2010 WL 5136106, at *5 (N.D. Tex. Dec. 16, 2010) (Lindsay, J.) (citing *Forsythe v. Saudi Arabian Airlines Corporation*, 885 F.2d 285, 289 (5th Cir. 1989)), nor may they be used to raise arguments or present evidence that could have been presented prior to entry of judgment, *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). A motion for a new trial may be appropriate, however, to prevent manifest injustice. *Amir-Sharif v. Commissioners of Dallas*, No. 3:07-CV-0175-G, 2007 WL 1308314, at *1 (N.D. Tex. May 4, 2007) (Fish, C.J.) (citing *Fresh America Corporation v. Wal-Mart Stores, Inc.*, No. 3:03-CV-1299-M, 2005 WL 1253775, at *1 (N.D. Tex. May 25, 2005) (Lynn, J.)). The burden rests with the party seeking a new trial to show that "prejudicial error has crept into the record or that substantial justice has not been done. . . ." *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999), *cert. denied*, 529 U.S. 1019 (2000).

The decision to alter or amend the judgment under Rule 59(e) is within the district court's discretion. *Stroman v. Thaler*, No. 3:05-CV-1616-D, 2009 WL 3295128, at *1 (N.D. Tex. Oct. 9, 2009) (Fitzwater, C.J.) (citations omitted). "[W]hile a district court has considerable discretion in deciding whether to reopen a case in response to a motion for reconsideration, such discretion is not limitless." *Templet v. Hydrochem Inc.*, 367 F.3d 473, 479 (5th Cir.), *cert. denied*, *Irvin v. Hydrochem, Inc.*, 543 U.S. 976 (2004). Reconsideration of a judgment is an extraordinary remedy

that should be used sparingly. *Stroman*, 2009 WL 3295128, at *1. "Indeed, the remedy is so extraordinary that the standard under Rule 59(e) favors denial of motions to alter or amend a judgment." *Berry v. Indianapolis Life Insurance Company*, No. 3:08-CV-0248-B, 2009 WL 1979262, at *1 (N.D. Tex. July 8, 2009) (Boyle, J.) (citations and internal quotation marks omitted). There are, however, two important judicial imperatives that the court must consider on a Rule 59 motion: "1) the need to bring litigation to an end; and 2) the need to render just decisions on the basis of all the facts." *Templet*, 367 F.3d at 479 (citations omitted). "The task for the district court is to strike the proper balance between these competing interests." *Id.*

### B. Application

The movants' claims of error are threefold. First, they argue that under Texas law, the plaintiffs are not entitled to recover compensatory or exemplary damages for fraud because the defendants' alleged conduct does not give rise to an injury independent of the contract between the parties. *See* Defendant Michael Ziegler's Brief in Support of His Motion for New Trial, and Alternatively Motion to Amend Judgment ("Ziegler Brief") at 1. Second, they dispute the jury's award of exemplary damages as not supported by clear and convincing evidence. *Id.* at 2. Finally, they contend that closing arguments from the plaintiffs' counsel prejudiced and confused the jury. *Id.* The court will address each issue in turn.

1. *The Plaintiffs' Recovery for Fraud*

Texas recognizes two measures of damages for fraud: the out-of-pocket measure and benefit-of-the-bargain measure. *Formosa Plastics Corporation USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex. 19998). "The out-of-pocket measure computes the difference between the value paid and the value received, while the benefit-of-the-bargain measure computes the difference between the value as represented and the value received." *Id.* Texas law precludes recovery of benefit-of-the-bargain damages in a fraud action where the parties failed to enter into an enforceable agreement. See *Baylor University v. Sonnichsen*, 221 S.W.3d 632, 637 (Tex. 2007). However, "[t]ort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract." *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 302-03 (Tex. Civ. App.--Dallas 2009, no pet.).

At trial, the plaintiffs argued that TDHB, Farish, and Ziegler made false representations including "representing the availability to Triad of the $1,000,000.00 proceeds from the Note . . ., their ability and intention to complete the Development Project, and their intention that Triad would purchase the real property for the Development Project." Court's Instructions to the Jury ("Instructions") at 11. Additionally, the plaintiffs alleged that because Triad had no money and no assets, its

stock was "worthless." *Id.* at 10. In sum, the complained-of fraud by Ziegler, Farish, and TDHB was designed to induce the plaintiffs to invest in a worthless development project. Brief in Support of Plaintiffs' Response to Michael Ziegler's Motion for a New Trial, and Alternatively Motion to Amend Judgment ("Opposition Brief") at 4. The jury determined that $1,150,000 sufficiently compensated Wallner for the damages that he suffered as a result of the fraud and $350,000 sufficiently compensated Wallner IRA for the same. Verdict (docket entry 98) at 46. These awards are commensurate with plaintiffs' out-of-pocket expenses, and do not constitute manifest error.[2] Additionally, since the jury found that the plaintiffs proved fraud, and Texas law permits recovery of exemplary damages for fraud, the jury's award of exemplary damages was also proper. *See* TEX. CIV. PRAC. & REM. CODE. ANN. § 41.003(a) (Vernon 2008).

---

[2] Texas's independent injury rule is inapposite where, as here, the plaintiffs seek to recover their out-of-pocket damages resulting from fraudulent inducement. See *Formosa*, 960 S.W.2d at 47 ("Allowing the recovery of fraud damages sounding in tort only when a plaintiff suffers an injury that is distinct from the economic losses recoverable under a breach of contract claim is inconsistent with . . . well established law, and also ignores the fact that an independent legal duty, separate from the existence of the contract itself, precludes the use of fraud to induce a binding agreement."); see also *Nelson v. Najm*, 127 S.W.3d 170, 176 (Tex. App.-- Houston [1st Dist.] 2003, pet. denied) ("Texas courts have long held under general principles of common-law fraud that one who is induced by fraud to enter into a contract has a choice of remedies: he may either recover his monetary damages flowing from the fraud or he may elect the equitable remedy of rescission in lieu of damages and demand a return of any amount paid.").

2. *Evidence Supporting the Jury's Award of Exemplary Damages*

The movants' challenge to the sufficiency of the evidence to support an award of exemplary damages is unpersuasive. Exemplary damages are predicated on a clear and convincing showing of harm resulting from: "(1) fraud; (2) malice; or (3) gross negligence." *L&C Consultants, LLC v. ASH Petroleum, Inc.*, No. 3:07-CV-1904-D, 2009 WL 3110200, at *11 (N.D. Tex. Sept. 29, 2009) (Fitzwater, C.J.) (citation and internal quotation marks omitted). Here, the plaintiffs presented evidence showing, among other things, that (1) Ziegler failed to inform Wallner that TDHB lacked sufficient cash to repay the note, (2) the movants named Wallner as a director on Triad's certificate of formation without notifying Wallner and before Wallner even agreed to invest in Triad, and (3) Ziegler purchased the tract of land in Waxahachie in the name of 777 using the plaintiffs' money without disclosing his intent to do so. These facts, and others presented at trial, support the jury's finding, by clear and convincing evidence, that Ziegler intended to -- and did in fact -- defraud the plaintiffs into investing in the development project through a series of material

misrepresentations and omissions.[3]  As such, the jury's award of exemplary damages was not in error.

### 3. *Allegedly Prejudicial Statements Made During Closing Arguments*

The movants also challenge statements made by opposing counsel during closing arguments. *See* Ziegler Brief at 19-24 (arguing that the plaintiffs' counsel prejudiced the jury by drawing adverse inferences from the absence of witnesses, referring to Ziegler's insolvency, and commenting on the shareholders' agreement and the defendants' failure to pay the option price).  Because the evidence at trial overwhelmingly supported the jury's finding of fraud, the court concludes that these statements do not warrant a new trial.  Indeed, to the extent that the plaintiffs' counsel made statements in error, the weight of the evidence presented at trial minimized any prejudicial effect of such statements. Cf. *Johnson v. Ford Motor Company*, 988 F.2d 573, 583 (5th Cir. 1993) ("[T]he alleged prejudicial effect of Ford's statements is minimized by the fact that their accuracy is supported by the record, and we conclude that Johnson has not presented us with a case of manifest

---

[3]  Ziegler's argument that the evidence is insufficient to prove justifiable reliance is without merit.  Wallner testified that he would not have invested in the development project had he known about the existence of 777 or had he known that TDHB did not have the $1 million to repay the note.  Opposition Brief at 11-12 (record citations omitted).  This case is palpably different from *Schlumberger Technology Corporation v. Swanson*, 959 S.W.2d 171 (Tex. 1997).  That case involved a specific disclaimer of reliance executed in an arms-length transaction intended to settle a dispute between two parties. *Id.* at 179-80.  Here, the evidence shows reliance, not a disclaimer of it.

injustice."). Accordingly, the movants have not shown cause for a new trial or an amended judgment.

### III. CONCLUSION

For the above-stated reasons, the movants' motions for a new trial are **DENIED** and their motions, in the alternative, to amend the judgment are also **DENIED**.

**SO ORDERED**.

March 23, 2011.

*/s/ A. Joe Fish*
**A. JOE FISH**
**Senior United States District Judge**